# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 8, 2010

Charles R. Fulbruge III
Clerk

No. 08-20825

CATHY A ANDERSON,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-3381

Before REAVLEY, DAVIS, and STEWART, Circuit Judges.

PER CURIAM:[*]

This is an appeal of the district court's orders substituting the Government as Defendant and dismissing the case. For the following reasons, we REVERSE and REMAND.

### I.

Plaintiff/Appellant Cathy Anderson is a Group Supervisor in the Office of Disability Adjudication and Review of the Social Security Administration ("SSA"). Scot Stier is a Case Intake Assistant in that office. Stier's duties as a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-20825

Case Intake Assistant included reviewing and analyzing cases from SSA claimants to ensure sufficiency of the evidence, preparing case summaries, communicating with claimants about their claims, and, when requested, receiving and reviewing incoming mail. At all relevant times, Appellant was Stier's supervisor.

In July 2007, Appellant proposed a three-day suspension of Stier for his alleged failure to properly process a large amount of mail that had been assigned to him. On October 2, 2007, Stier wrote a letter to the Disclosures Unit of the Office of Special Counsel ("OSC"), alleging that Appellant had been "confiscating" mail from SSA claimants and "holding on to it" for more than a year, rather than allowing the mail to be properly distributed for review. Stier claimed that Appellant's actions violated the claimants' due process rights and that her actions were a "gross mismanagement and abuse of authority."[1]

On September 29, 2008, Appellant filed a Petition in Texas Civil District Court, claiming that Stier's letter to the OSC had defamed her. In the alternative, Appellant claimed that Stier's letter had caused her intentional infliction of emotional distress. On November 14, 2008, the Government – acting on Stier's behalf – removed the case to federal district court. The Government also filed a motion to substitute itself as Defendant in the case. As grounds for removal and substitution, the Government argued that Stier had been acting within the scope of his employment when he wrote the allegedly defamatory statements. Accordingly, the Government argued that the exclusive remedy for Appellant's claims was the Federal Tort Claims Act ("FTCA"), and that the

---

[1] The record indicates that the OSC concluded its investigation against Appellant and took no action against her. Stier, however, was ultimately suspended by the SSA temporarily for failure to perform his duties. Stier subsequently filed a "Whistleblower" claim with the Merit Systems Protection Board, alleging that the SSA retaliated against him for writing his complaint letter about Appellant to the OSC. The MSPB held, however, that Stier had been reprimanded for his failure to do his job and not for his purported whistleblowing activity.

proper Defendant was the Government. *See* 28 U.S.C. §§ 2679(b)(1), (d). The Government attached a certification from the United States Attorney for the Southern District of Texas asserting that Stier was acting within the scope of his employment for purposes of the FTCA. A week later, the Government moved for dismissal of the entire case, arguing that Appellant had failed to exhaust her administrative remedies and that her claims were otherwise barred by the FTCA.

On December 9, 2008, the district court granted the Government's motion to substitute parties and dismissed Stier from the case. Also on that day, the district court issued a final order of dismissal. Appellant now appeals both the order substituting parties and the order dismissing the case.

## II.

We review a district court's dismissal of a case on the pleadings de novo. *See Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

## III.

We begin with the district court's order substituting the Government as Defendant. The entirety of that order states: "Scot A. Stier is dismissed, and the United States of America is substituted under the Federal Torts Claims Act."

The FTCA provides the exclusive remedy "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting *within the scope of his office or employment* . . . ." 28 U.S.C. § 2679(b)(1) (emphasis added). Specifically, § 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant employee was acting *within the scope of his office or employment* at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States

No. 08-20825

under the provisions of this title and all references thereto, and the
United States shall be substituted as the party defendant.

§ 2679(d)(1) (emphasis added).

In the instant case, the United States Attorney for the Southern District
of Texas, acting on proper authority for the Attorney General, certified that Stier
was acting within the scope of his employment when Stier wrote the allegedly
defamatory letter. *See* 28 C.F.R. § 15.4(a). This certification precludes us from
ordering a remand to state court in the event that the Attorney General and the
district court erred in determining Stier's scope of employment. *See* § 2679(d)(2);
*Osborn v. Haley*, 549 U.S. 225, 241-42, 127 S. Ct. 881, 894 (2007). However, the
certification does not "preclude a district court from resubstituting the federal
official as defendant *for purposes of trial* if the court determines, post removal,
that the Attorney General's scope-of-employment certification was incorrect."
*Id.* at 242, 127 S. Ct. at 894 (emphasis in original). Accordingly, the district
court's order substituting parties is susceptible to our review. *See id.*; *Garcia v.
United States*, 62 F.3d 126, 127 (5th Cir. 1995) (en banc).

"[W]hether a particular federal employee was or was not acting within the
scope of his employment is controlled by the law of the state in which the
negligent or wrongful conduct occurred." *Garcia*, 62 F.3d at 127 (citing *Williams
v. United States*, 350 U.S. 857, 76 S. Ct. 100 (1955)). In Texas, to be found
within the scope of employment, an employee's act must fall "[1] within the scope
of the employee's general authority [2] in furtherance of the employer's business
and [3] for the accomplishment of the object for which the employee was hired."
*Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (citing
*Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.3d 354, 357 (Tex. 1971)). In
addition, "'the conduct must be of the same general nature as that authorized or
incidental to the conduct authorized.'" *Id.* (quoting *Smith v. M Sys. Food Stores,*

4

*Inc.*, 297 S.W.2d 112, 114 (1957)).  "In other words, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation."  *Id.* (citing *ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 158 (Tex. App. 1996)).

"For an employer to be liable for defamation by its employee in Texas, the defamatory statement must be (1) referable to a duty owed by the employee to the employer and (2) made while the employee is in the process of discharging that duty."  *Rodriguez v. Sarabyn*, 129 F.3d 760, 769 (5th Cir. 1997) (citing *Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex. 1968)).  For an employer to escape vicarious liability, a employee has to do more than "mentally turn[] aside" from his employer's business and must be outside of his actual duties of employment.  *Id.* (citing *H.T. Cab Co. v. Ginns*, 280 S.W.2d 360, 362 (Tex. App. 1955)); *Tex. & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 241 (Tex. 1952)).

In *Minyard*, the plaintiff sued Minyard (her employer) and her direct supervisor for defamatory comments that her supervisor had made in response to a workplace misconduct investigation.  *Minyard,* 80 S.W.3d at 578.  The court held that the supervisor had acted outside the scope of his employment when defaming the plaintiff  because there was no evidence that the supervisor's comments "were referable to any duty owed to Minyard, or, in other words, were in furtherance of Minyard's benefit, and for the accomplishment of the object for which the employee was hired."  *Id.* at 579.  The court noted that "Minyard's policies require employees to participate in workplace misconduct investigations," as the supervisor did when he defamed the plaintiff, arguably giving rise to a duty by the supervisor to speak to the investigators.  *Id.* Nevertheless, the court held that no vicarious liability existed because "these policies do not demonstrate that [the supervisor's] defaming [the plaintiff] to [another worker] during the investigation would further Minyard's business and accomplish a purpose of [the supervisor's] job."  *Id.*

No. 08-20825

*Minyard* is analogous to the instant case. Like the supervisor in *Minyard*, Stier made his allegedly defamatory comments as part of what would become a workplace misconduct investigation. However, assuming Appellant's allegations to be true, Stier's comments were not in furtherance of his specific duties as a Case Intake Assistant, but made out of a personal vendetta to punish Appellant for her recommended suspension. Stier was not "acting for the employer's benefit" when he lied about Appellant, nor were his defamatory comments "to accomplish an objective of his job." *Id.* at 578 (citations omitted). Indeed, as the court in *Minyard* stated, "[t]here is a critical distinction between defaming someone to one's employer and defaming someone for one's employer." *Id.* at 579. Moreover, Stier did more than mentally turn aside from his duties. He deviated from his normal courses of action to fabricate a story that Appellant was harming others.

Despite noting the similarities to *Minyard*, the Government argues that Stier was acting within the scope of his employment because Stier's letter complained of Appellant withholding claimants' mail, and Stier's duties included processing correspondence in a timely manner. The Government further argues that we have already held that government agents who allegedly defamed another in the course of their duties were shielded from defamation claims because their comments "were incident to the discharge of [their duties]." *See Rodriguez*, 129 F.3d at 770-71.[2] *Rodriguez*, however, is distinguishable. In *Rodriguez*, two federal agents were specifically tasked by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") to make statements on the agency's behalf to third parties about a particular work-related incident. *See id.* at 770. One of the agents also had a duty as supervisor to inform his subordinates of the event. *Id.*

---

[2] The Government also cites *Aversa v. United States*, 99 F.3d 1200, 1207-08, 1213 (1st Cir. 1996). *Aversa*, however, is a First Circuit case that applies New Hampshire law regarding scope of employment, not Texas law. *See id.* at 1210. Its ruling is therefore not apposite.

6

No. 08-20825

In the instant case, however, no one at the SSA specifically tasked Stier to report on his supervisor's behavior, nor was it a specific function of his work duties. Instead, Stier gratuitously provided the allegedly defamatory statements to the OSC while doing nothing to seek relief through his own chain of command. Stier may perhaps have had a general duty to report misconduct or illegal activity. Moreover, such a report, if true, may ultimately facilitate the performance of his duties. However, this general duty is not the same as being specifically tasked by one's superiors to provide information to third parties about a particular incident, nor is it akin to a supervisor's duty to keep his subordinates informed of relevant events. *See Rodriguez*, 129 F.3d at 770-71; *see also Crouch v. J C Penney Corp., Inc.*, 337 F. App'x 399, 403 (5th Cir. 2009) ("If statements made by an employee to his employer about another employee as part of a *required* workplace investigation cannot give rise to defamation [by vicarious liability], JCP cannot be liable for defamation simply because it *allowed* employees to report misconduct to HR.") (emphasis in original). Accordingly, we do not find the facts in *Rodriguez* dispositive.[3]

In conclusion, Stier was not hired nor tasked with supervising Appellant and reporting on her behavior. Any purported duty to do so in order to prevent fraud, waste, and abuse was tangential to his duties as a Case Intake Assistant. Assuming Appellant's allegations are true (which we must at the pleadings stage), Stier's defamatory letter was not "for the accomplishment of the object for which [he] was hired," *Minyard*, 80 S.W.3d at 577, and therefore was not "within the scope of his office or employment," § 2679(d)(1). Accordingly, the

---

[3] Indeed, the court in *Minyard* distinguished the statements of the ATF agents in *Rodriguez* by noting that "the defamatory statements [in *Rodriguez*] were the kind that the employees were 'authorized and expected to make and were closely connected to the performance of their duties.'" *Minyard*, 80 S.W.3d at 579 (quoting *Rodriguez*, 129 F.3d at 771). We do not find the same case here.

No. 08-20825

Government erred in certifying Stier's actions, and the district court erred in substituting the Government as Defendant.

IV.

Because the United States is not the proper Defendant, we must review the district court's dismissal of Appellant's claims based on the laws that would have applied if Stier had remained in the case. The district court held that Appellant's claim of defamation was barred by the statute of limitations. However, the statute of limitations for a tort claim of defamation is one year, and Appellant filed her case less than one year after Stier published the letter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (Vernon 2002). Accordingly, dismissal of the defemation claim was improper. Secondly, the district court held that Appellant's claim of intentional infliction of emotional distress was barred by Appellant's failure to exhaust administrative remedies. However, because the Government is not a proper party, this case does not fall within the FTCA's exhaustion requirements. Accordingly, dismissal of Appellant's second claim was also improper.

V.

The district court's order substituting the Government as Defendant is REVERSED. Consequently, the district court's order dismissing Appellant's claims based on the statute of limitations and failure to exhaust administrative remedies under the FTCA is REVERSED. The case is REMANDED for further proceedings.